IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-256-FL

| | | |
|---|---|---|
| THE INSURANCE SHOPPE OF NORTH CAROLINA, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | ORDER |
| WEST AMERICAN INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for summary judgment (DE 46, 58) and respective motions to exclude expert witness testimony (DE 50, 56). The issues raised are ripe for ruling. For the following reasons, defendant's motion for summary judgment is granted, plaintiff's corresponding motion is denied, and the parties' motions to exclude expert witness testimony are denied as moot.

## STATEMENT OF THE CASE

Plaintiff, serving as an insurance agent for its clients, commenced this action June 21, 2019, asserting a breach of contract claim arising out of the alleged failure of defendant, an affiliate of Liberty Mutual Insurance Company, to indemnify plaintiff for certain costs pursuant to a contract between them entitled the "Liberty Mutual Commercial Insurance Producer Agreement" (the "Agreement"). Plaintiff seeks indemnification for all losses, damages, costs, and expenses arising from a state court action brought against it by its former client, Harrington Companies, LLC ("Harrington").

Following a period of discovery, defendant filed its motion for summary judgment with reliance upon: 1) the Agreement; 2) pleadings in the Lee County, North Carolina action, <u>Harrington Companies, LLC v. The Insurance Shoppe of North Carolina, Inc.</u>, No. 18-CV-000465; 3) a 2017-2018 insurance policy; 4) deposition testimony of William Jeremy Pearce ("Pearce"), plaintiff's Federal Rule of Civil Procedure 30(b)(6) designee; 5) deposition testimony of Dwight M. Hinton, Jr. ("Hinton"), the now-retired executive general adjuster for defendant; 6) affidavits of Roy Harrington ("Roy"), managing member of Harrington, and Rhonda Harrington ("Rhonda"), his wife; 7) certain email correspondence; and 8) a confidential memorandum of settlement between defendant and Harrington. Plaintiff's arguments in opposition, also grounded upon the Agreement, additionally make reference to: 1) deposition testimony of David L. Grady ("Grady"), plaintiff's owner; and 2) certain email correspondence. As noted, plaintiff also moved for summary judgment in its favor.

Unsurprisingly, the terms of the Agreement are central, too, to plaintiff's motion. Advancing entitlement to judgment in its favor, plaintiff additionally relies upon: 1) excerpts of insurance policies spanning 2013-2018; 2) a summary chart of coverage limits related to those policies; 3) a letter from Hinton to Roy; 4) the aforementioned state court complaint; 5) excerpts of Hinton's deposition testimony; and 6) deposition testimony of Taylor Terrell ("Terrell"), an underwriter for defendant. Defendant's arguments in opposition to plaintiff's motion for summary judgment make reference to materials relied upon in support of its motion as well as deposition testimony of Terrell and the letter from Hinton to Roy.

Additionally, each party moves to exclude testimony of the other side's expert witness. Towards this end, defendant seeks exclusion of the testimony of David Stegall ("Stegall"). Plaintiff, in turn, seeks exclusion of the testimony of Brenda Wells ("Wells").

2

**STATEMENT OF UNDISPUTED FACTS**

Under the Agreement, made effective June 4, 2014, plaintiff had a non-exclusive right to transmit submissions to purchase insurance to defendant for its consideration. Defendant could quote such submissions at its sole discretion. Pursuant to that Agreement, starting by at least 2014, plaintiff began procuring commercial real estate insurance coverage from defendant on behalf of Harrington, plaintiff's client since 2010, for warehouse properties in Sanford, North Carolina. Plaintiff continued to procure yearly policies from defendant on Harrington's behalf for these properties through 2017. All of the relevant policies contained an 80% coinsurance provision which, in effect, allowed defendant to not pay the full amount of any loss if the value of covered property at the time of loss times the coinsurance percentage is greater than the limit of insurance for the property and, instead, pay a reduced amount.[1]

In September 2017, Harrington's covered properties suffered damage as the result of a windstorm. Harrington submitted a claim for this loss under its policy to defendant, which defendant initially adjusted downwards on the basis that some of the properties, calculated by it as worth $13,851,741 in total, were underinsured per the 80% coinsurance provision. See, e.g., Dec. 22, 2017, Letter (DE 61-4) at 4 (asserting that a covered building was worth $4,538,982, meaning, under the coinsurance provision, it should have been covered in the amount of $3,631,186, but that Harrington only had a coverage amount of $1,513,527). Harrington and defendant resolved this claim by March 15, 2018, confidential settlement agreement.

---

[1] Policy terms explain, as an example, that for an 80% coinsurance provision, if the value of a property is $250,000, the policyholder has $100,000 in coverage, and the property suffers $40,000 in loss, defendant would cover $19,750 in damages, as calculated by determining the minimum amount of insurance required by the coinsurance provision ($250,000 × .8 = $200,000), dividing the actual coverage amount by that minimum required amount ($100,000 ÷ $200,000 = .5), multiplying that number by the amount of loss ($40,000 × .5 = $ 20,000), and, finally, subtracting the relevant deductible ($20,000 − $250 = $19,750).

On May 24, 2018, Harrington brought suit against plaintiff in the Superior Court of Lee County, North Carolina, (the "Harrington action"), for damages stemming from alleged breaches of fiduciary and contractual duties, and from unfair and deceptive trade practices  In particular, Harrington alleges in its complaint that "[a]t the time [plaintiff] procured renewal on behalf of [Harrington]," in 2017, plaintiff had not "conducted any independent research, investigation, or inquiry to determine what the appropriate amounts of coverage for each building should be under [Harrington's] replacement cost policy with [defendant]"; "made any independent inquiry or investigation as to what the actual replacement cost for each building would be in the event of a complete or partial loss"; "made any independent inquiry or investigation as to what the financial effect of the co-insurance provision contained in the policy with [defendant] would have on [Harrington] in the event of a complete or partial loss if the buildings were underinsured"; nor discussed with, disclosed to, advised, or informed Harrington "the nature and effect of replacement cost insurance and its relationship with a co-insurance penalty clause," "what the 'coverage amount' should be for each building," or the fact that the policy was a "co-insurance contract" and its attendant legal and financial effects.

Shortly after initiation of the Harrington action, plaintiff sought indemnification from defendant for attorneys' fees and costs incurred in its defense of that action, relying on a provision of the Agreement (the "indemnification clause"), wherein

> [defendant] agree[s] to indemnify, protect, and hold [plaintiff] harmless from and against any and all civil liability, and all claims, losses damages, costs, and expenses, including court costs and reasonable attorneys' fees related thereto, arising out of or incurred by reason of any error or omission on the part of [defendant], [defendant's] directors, officers, agents, or employees in placing business pursuant to or carrying out the terms and conditions of this agreement, except to the extent such error or omission was caused or contributed to by [plaintiff].

Defendant declined to provide the requested indemnification and continues to deny any responsibility to indemnify plaintiff for the expenses claimed in the pending state court action. The instant suit followed.

**COURT'S DISCUSSION**

A.      Motions for Summary Judgment

    1.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court "consider[s] each motion separately on its own merits to determine whether [any] of the parties deserves judgment as a matter of law." Defs. of Wildlife v. N.C. Dep't of Transp., 762 F.3d 374, 392 (4th Cir. 2014).[2] The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

---

[2]      Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

2. Analysis

"[U]nder Massachusetts law, interpretation of a contract is ordinarily a question of law for the court[.]" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 783 (1st Cir. 2011); see Caldwell Tanks, Inc. v. Haley & Ward, Inc., 471 F.3d 210, 217 (1st Cir. 2006) ("[W]here material facts are not in dispute, interpretation of an indemnity clause is an issue of law.").[3] Where "the contract

---

[3] The parties agree that Massachusetts law applies to plaintiff's breach of contract claim per the choice of law provision of the Agreement. (Pl.'s Stmt. (DE 60) ¶ 4; Def.'s Stmt. (DE 48) ¶ 8; see also Agreement (DE 49-1) at 11).

6

language [is] unambiguous, [the court] interpret[s] it according to its plain terms," Den Norske Bank AS v. First Nat. Bank of Bos., 75 F.3d 49, 52 (1st Cir. 1996), and "[s]ummary judgment is appropriate when those plain terms unambiguously favor either side." Farmers, 632 F.3d at 784.

"[A] contract should be construed to give it effect as a rational business instrument and in a manner which will carry out the intent of the parties." Starr v. Fordham, 648 N.E.2d 1261, 1270 (Mass. 1995). Absent fraud or mistake, "an agreement is presumed to express the intent of the parties." Fairfield 274-278 Clarendon Tr. v. Dwek, 970 F.2d 990, 993 (1st Cir. 1992). Specifically, "[c]ontracts of indemnity are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished." Nicolaci v. Anapol, 387 F.3d 21, 24 (1st Cir. 2004); Caldwell Tanks, 471 F.3d at 217 ("[I]ndemnification provisions are construed in accordance with their ordinary and plain meaning[.]"). Massachusetts law requires that "indemnification provisions [be] construed . . . without any bias in favor of the indemnitor or against the indemnitee." Caldwell Tanks, 471 F.3d at 217; Shea v. Bay State Gas Co., 418 N.E.2d 597, 600 (Mass. 1981). Finally, "[w]hen there is an express agreement of indemnity in a contract, a claim for indemnity accrues when there is a breach of that provision." Fall River Hous. Auth. v. H.V. Collins Co., 604 N.E.2d 1310, 1312 (Mass. 1992) (emphasis omitted).

Neither party asserts that the contract's terms are ambiguous, and the court does not find them to be so. See generally Bank v. Thermo Elemental Inc., 888 N.E.2d 897, 907 (Mass. 2008) ("Contract language is ambiguous where the phraseology can support a reasonable difference

---

See generally Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 602 (4th Cir. 2004) ("Despite North Carolina's adherence to the presumptive rule of lex loci contractus, contracting parties in North Carolina are entitled to agree that a particular jurisdiction's substantive law will govern their contract, and such a provision will generally be given effect.").

opinion as to the meaning of the words employed and the obligations undertaken."). Thus, the court is presented with the legal question of whether the Agreement's indemnification clause requires defendant to indemnify plaintiff for attorneys' fees and costs incurred in the Harrington action.[4] If it does, defendant breached the Agreement, and summary judgment in plaintiff's favor is proper. If it does not, defendant did not breach, and summary judgment in its favor is proper.

The court concludes, for reasons herein discussed, that the terms of the Agreement, plainly read, demonstrate that defendant does not have a contractual duty to indemnify plaintiff for the expenses claimed.

a. "Civil Liability, and All Claims, Losses, Damages, Costs, and Expenses, Including Court Costs and Reasonable Attorneys' Fees Related Thereto"

To qualify for reimbursement of attorneys' fees and costs, the indemnification clause requires the "court costs" and "attorneys' fees," like the other items listed, to "relate[] []to" "civil liability." The phrase "related thereto" syntactically modifies the preceding clause following "liability, and" to limit the scope of "all claims, losses damages, costs, and expenses, including court costs and reasonable attorneys' fees" to those related to "any and all civil liability." See generally Fleet Nat. Bank v. H&D Ent., Inc., 96 F.3d 532, 538 (1st Cir. 1996) ("[A] contract governed by Massachusetts law must be construed in accord with common sense[ and] the likely intent of the parties[.]").

---

[4] Although the complaint asserts that plaintiff seeks "indemnification and defense from [defendant]," (Compl. (DE 1) at 5 (emphasis added)), in briefing, plaintiff has disavowed that it seeks to enforce any duty to defend on the part of defendant. (See, e.g., Pl.'s Resp. (DE 71) at 9). The parties do not raise, so the court does not address, the issue of whether plaintiff forfeited the ability "[t]o enforce an indemnification clause," where it did not "give the indemnitor notice and an opportunity to defend." Psychemedics Corp. v. City of Bos., 161 N.E.3d 399, 409 (Mass. 2021) (emphasis added); see also Monadnock Display Fireworks, Inc. v. Town of Andover, 445 N.E.2d 1053, 1057 (Mass. 1983) ("An indemnitee must give an indemnitor notice and an opportunity to defend the underlying action if the indemnitor is to be precluded from claiming that judgment against the indemnitee could have been avoided or that the settlement was unreasonable[.]").

Under Massachusetts law, "liabilities" is "an appropriate word to express obligations . . . founded upon a judgment," but "[t]he word undoubtedly may comprise contingent obligations." Starr, 648 N.E. 2d at 1269; see also Liability, Black's Law Dictionary (10th ed. 2014) ("The quality, state, or condition of being legally obligated or accountable."). In turn, "indemnify" means "[t]o reimburse (another) for a loss suffered because of a third party's or one's own act or default." Indemnify, Black's Law Dictionary (10th ed. 2014); see also Caldwell Tanks, 471 F.3d at 216 (defining "indemnity" as "[a] duty to make good any loss, damage, or liability incurred by another" (emphasis omitted)). Accordingly, the provision, further defined, requires defendant to reimburse plaintiff for the expense of attorneys' fees and costs related to obligations founded upon a judgment or other comparable legal obligation. Yet, plaintiff has not yet suffered a loss related to an obligation founded upon a judgment, as no judgment has been entered in the Harrington case. Nor has plaintiff suffered a loss due to a comparable legal obligation. Therefore, its demand for attorneys' fees and court costs falls outside the scope of the indemnity provision.

This understanding of the provision is bolstered by Massachusetts courts' treatment of indemnity and the duty to indemnify generally. See Wilkinson v. Citation Ins. Co., 856 N.E.2d 829, 836 (Mass. 2006) ("Th[e] duty [to indemnify] arises only after the [indemnitee's] liability has been established[.]"); Fall River, 604 N.E.2d at 1313 (explaining that "a breach of [a contractual indemnity provision] would occur when [the indemnitee] pays damages to the injured person because [the indemnitor] expressly agreed to pay such damages"); Newell-Blais Post No. 443, Veterans of Foreign Wars of U.S., Inc. v. Shelby Mut. Ins. Co., 487 N.E.2d 1371, 1374 (Mass. 1986) ("The issue of indemnification must await the completion of trial."); cf. 275 Washington St. Corp. v. Hudson River Int'l, LLC, 987 N.E.2d 194, 200 (Mass. 2013) ("[W]here . . . the lease does

9

not specify when indemnification is due, indemnification under our common law does not become due until the end of the original lease term, when damages may be wholly ascertained.").

Moreover, plaintiff's demand for defendant to fund its defense costs prior to judgment, regardless of plaintiff's ultimate liability in the Harrington action, is in effect, an invocation of the very duty to defend that it disclaims. Holyoke Mut. Ins. Co. in Salem v. Vibram USA, Inc., 106 N.E.3d 572, 576 (Mass. 2018) (explaining that the "duty to defend . . . is triggered . . . notwithstanding the possibility that the underlying claim may ultimately fail or that the merits of the claim are weak of frivolous"); Mount Vernon Fire Ins. Co. v. Visionaid, Inc., 76 N.E.3d 204, 212 (Mass. 2017) (discussing the duty to pay defense costs); see Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 539 (Mass. 2003). But Massachusetts's courts have repeatedly explained that a duty to indemnify and a duty to defend are distinct and separate. See generally Wilkinson, 856 N.E.2d at 836 ("There is a meaningful difference between an insurer's duty to defend . . . and a duty to indemnify."); Bos. Symphony Orchestra, Inc. v. Com. Union Ins. Co., 545 N.E.2d 1156, 1158 (Mass. 1989) ("The duty to defend, however, is antecedent to, and independent of, the duty to indemnify[.]").

For example, as Massachusetts's Appeals Court has noted, even language in an indemnity provision requiring the indemnitor to "indemnify and hold harmless . . . from . . . all claims, losses, liabilities and expenses, including attorney's fees," does not create a duty to defend. Miley v. Johnson & Johnson Orthopaedics, Inc., 668 N.E.2d 369, 372 (Mass. App. Ct. 1996); Herson v. New Bos. Garden Corp., 667 N.E.2d 907, 911, 914 (Mass. App. Ct. 1996) (explaining that language requiring the indemnitor to "indemnify . . . [the indemnitees] . . . against any and all suits, actions, . . . claims, . . . liabilities, . . . attorney's fees [and] costs . . . arising out of injury or death of [the indemnitor's] employees . . . caused . . . or claimed to be caused . . . by reason of any act[ or]

10

omission . . . of [the indemnitor]" did not "require[] that indemnity payments be tendered unless and until it has been proven that [the indemnitor] caused the injury").

Further, the duty to defend, between the two, is the one associated with the "requir[ement] [of] immediate payment of indemnitee's defense costs." Herson, 667 N.E.2d at 914; see Preferred Mut. Ins. Co. v. Gamache, 686 N.E.2d 989, 991 (Mass. 1997). And the parties demonstrated elsewhere in the Agreement that they knew how to impose a duty to defend on one of the parties where that was their intent. Note where the Agreement provides "[w]ithout limiting the generality of the foregoing [indemnity provisions], [plaintiff] agree[s] to defend, indemnify, and hold [defendant] . . . harmless from and against any and all expenses, including legal fees, claims, suits, . . . awards, judgments, . . . and settlements arising out of or in any way related to [plaintiff's] failure to comply with any applicable . . . requirements to disclose [its] compensation or of the existence or terms of this Agreement to [defendant's] insureds, potential insureds, or regulators."

Plaintiff does not point, in support of its argument, to any case applying Massachusetts law that considered a factual context comparable to the instant circumstances, that is, an indemnitee seeking indemnification for attorneys' fees and costs incurred in an underlying suit, prior to judgment or any finding of liability, on the basis of facts not found in that underlying suit. The primary case plaintiff directs attention to is one construing an entity's duty to defend, rather than to indemnify. See Cardin v. Pac. Emps. Ins. Co., 745 F. Supp. 330, 331, 333-34 (D. Md. 1990) (holding that, in regard to the insurer's duty to defend, a cause of action for an insurer's denial of payment of defenses costs accrued on the date of denial); see also John Beaudette, Inc. v. Sentry Ins. A Mut. Co., 94 F. Supp. 2d 77, 103 (D. Mass. 1999) ("With respect to the contractual duty to indemnify, the duty does not arise until issuance of a judgment, settlement or final resolution wherein the insured becomes legally obligated to pay damages."). The other case upon which

11

plaintiff relies specifically distinguishes its holding from the normal course due to the unique considerations undergirding a "legal obligation imposed by a governmental agency, pursuant to an environmental statute." OneBeacon Am. Ins. Co. v. Narragansett Elec. Co., 31 N.E.3d 1143, 1154 (Mass. App. Ct. 2015); (see also Pl.'s Resp. (DE 71) at 15 (citing OneBeacon, 31 N.E.3d at 1153) (relying on a portion of OneBeacon's analysis as favoring indemnification despite that excerpt arising as part of the court's analysis as to a duty to defend)).

In sum, both the language of the indemnity provision and concept of indemnity as understood by Massachusetts courts compel the conclusion that the provision only applies once a judgment has been entered in the underlying case or other final, legally obligating action has been taken. It is undisputed that neither is true in regard to the Harrington suit. Thus, defendant was not obligated to honor plaintiff's demand for attorneys' fees and costs under the indemnity provision and, therefore, did not breach the Agreement.

        b.      "Arising Out of . . . Any Error . . . on the Part of [Defendant]"

Moreover, defendant is entitled to judgment where attorneys' fees and costs incurred by plaintiff in the Harrington action do not on the face of that complaint arise out of an error on defendant's part, as required by the indemnity provision.

To fall under the ambit of the Agreement's indemnity provision, the "court costs and reasonable attorneys' fees" must "relate[] . . . []to" a "civil liability . . . arising out of or incurred by reason of any error or omission on the part of [defendant] . . . in placing business pursuant to or carrying out the terms and conditions of th[e] Agreement." Thus, the inquiry is whether Harrington's claim, upon which the civil liability would have to be premised, arises out of an error on defendant's part in placing business pursuant to or carrying out the terms and conditions of the Agreement.

Under Massachusetts law, the phrase "arising out of" generally means "originating from, growing out of, flowing from, incident to, or having connection with" and "indicates a wider range of causation than the concept of proximate causation in tort law," "fall[ing] somewhere between proximate and 'but for' causation." Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 7 (1st Cir. 2000); see also Bagley v. Monticello Ins. Co., 720 N.E.2d 813, 816 (Mass. 1999) ("The phrase 'arising out of' must be read expansively[.]"). However, "there must be a sufficiently close relationship between the injury and the [covered conduct]." Ruggerio Ambulance Serv., Inc. v. Nat'l Grange Ins. Co., 724 N.E.2d 295, 299 (Mass. 2000). In other words, there must be "a reasonably apparent causal connection between the injury and relevant event." AIG Prop. Cas. Co. v. Cosby, 892 F.3d 25, 28 (1st Cir. 2018). At bottom, "[t]here is no bright line test"; "[w]hether a particular injury is sufficiently related to [covered conduct] must be decided on a case-by-case basis and requires a judgment call . . . as to where along a continuum of causation fall the facts of each case." Commerce Ins. Co. v. Ultimate Livery Serv., Inc., 897 N.E.2d 50, 61-62 (Mass. 2008).

In this context, the inquiry examines what the "complaint in the underlying action" alleges in order to determine whether the "claim . . . and . . . resulting injuries[] had their genesis" in the category of acts out of which the claim is required to have arisen. See, e.g., Bagley, 720 N.E.2d at 816-17. Plaintiff's claim for indemnification has arisen prior to entry of judgment in the underlying action.[5] This is unlike a standard claim for indemnification, as discussed above, see, e.g., Holyoke Mut. Ins., 106 N.E.3d at 576 n.8; Newell-Blais Post No. 443, 487 N.E.2d at 1374, which would allow any duty to indemnify on defendant's part to be "determined by the facts . . .

---

[5] Some future finding in the Harrington action that plaintiff is not liable to Harrington on account of cognizable error(s) by this defendant would, should the question raised now be posed then, present a very different context for decisionmaking.

13

established at trial" or in an equally legally conclusive context. Travelers Ins. Co. v. Waltham Indus. Lab'ys Corp., 883 F.2d 1092, 1099 (1st Cir. 1989).

In this instance, the court's focus is "the source from which the [complainant's] . . . injury originates rather than the specific theories of liability alleged." Bagley, 720 N.E.2d at 817 (explaining that this principle, although arising from "duty to defend cases," may "appl[y] with equal force to the duty to indemnify"); see also Brazas, 220 F.3d at 7.

Here, the parties raise two possible sources of injury: 1) the alleged error by defendant's underwriter in failing to ensure the properties were insured to adequate value to avoid the coinsurance penalty, as asserted by plaintiff, or 2) purported errors by plaintiff in procuring insurance for Harrington, such as failures to explain, disclose, or investigate. Looking to the underlying complaint, "any . . . civil liability" related to that complaint and "court costs and reasonable attorney's fees" stemming therefrom do not have a sufficiently close relationship to any error by defendant in placing business pursuant to or carrying out the terms of the Agreement. Therefore, plaintiff's claim for indemnification is precluded because it does not arise out of an error by defendant.

The source of injury for the Harrington claim, for which plaintiff seeks reimbursement of related attorneys' fees and costs, is a "separate and distinct event[]" from any alleged error by defendant. Brazas, 220 F.3d at 7. While the Harrington complaint does assert that because "[p]laintiff [was] significantly underinsured . . . , [defendant] imposed a substantial co-insurance penalty" and that "[a]s a direct and proximate result of [plaintiff] being underinsured, . . . [p]laintiff was damaged . . . in an amount in excess of $1,000,000.00," it lays this mistake squarely and solely at the feet of plaintiff.[6] Harrington alleges that it was underinsured because of plaintiff's failure

---

[6] Plaintiff maintains inconsistent positions on whether reference to the Harrington complaint in answering the instant inquiry is proper, (see, e.g., Pl.'s Resp. (DE 71) at 10 (asserting that the "Harrington Companies' claims arise

14

to disclose certain information regarding the coinsurance policy and to independently inquire or investigate as to the replacement costs of the properties, the potential impact of the coinsurance provision, or what coverage amount the Harrington's should have.

Accordingly, the "source from which [Harrington's] . . . injury originates" is independent from any error by defendant, rather than "interdependent" with or "indisputably derived from" that purported error. Brazas, 220 F.3d at 7-8. Moreover, on the face of the Harrington complaint, while defendant imposed a substantial coinsurance penalty, it did so because Harrington was underinsured as a result of plaintiff's actions, meaning that plaintiff's alleged error "preceded[] and set the context for" defendant's imposition of the coinsurance penalty. Brazas, 220 F.3d at 8; see also Specialty Nat. Ins. Co. v. OneBeacon Ins. Co., 486 F.3d 727, 733 (1st Cir. 2007) ("The expression 'arising out of' . . . does not refer to all circumstances in which the injury would not have occurred 'but for' [the covered conduct].").

Plaintiff points to deposition testimony of defendant's underwriter that it purports indicates a responsibility of defendant in ascertaining coverage amounts. That testimony, however, is not a "fact" established, or even present, in the underlying suit from which indemnification is sought. See, e.g., Newell-Blais Post No. 443, 487 N.E.2d at 1374; Travelers Ins., 883 F.2d at 1099. In sum, the claim for civil liability against plaintiff, and attorneys' fees and court costs related thereto, arise not out of an error by defendant but an alleged error by plaintiff. Therefore, plaintiff's

---

from [defendant's] mistake" through reliance on allegations in "[t]he Harrington Complaint"); Pl.'s Reply (DE 74) at 5), or whether the complaint "has no legal bearing" on the inquiry before the court. (Pl.'s Resp. (DE 71) at 11). As already noted by the court, Massachusetts law belies plaintiff's assertion that the Harrington complaint has no legal bearing on the question before the court. Bagley, 720 N.E. 2d at 816 (beginning its analysis of the indemnity question with "a fair reading of the plaintiff's complaint in the underlying action" to conclude that it "indicate[d] that her claim against [the insured], and her resulting injuries, had their genesis in [conduct excluded from coverage]").

demand for reimbursement of those attorneys' fees and costs on the showing made falls outside of the indemnification clause.[7]

Accordingly, defendant must be awarded summary judgment as a matter of law on the undisputed facts. Defendant's motion is granted and plaintiff's motion for summary judgment must be and is denied.

B.     Motions to Exclude Experts

Plaintiff moves to exclude testimony and opinion of Wells, who holds a doctorate in risk management and insurance, serves as a professor of that subject at East Carolina University, and opines that plaintiff violated its duty of reasonable care as an insurance agent or broker and caused harm to Harrington, on the basis that she is unqualified. In turn, defendant moves to exclude testimony and opinion of Stegall, who is an insurance and risk management consultant, on the basis that his opinions on the practices of the insurance industry are unreliable and speculative. However, because the court's above analysis does not rely on either purported expert's testimony and because grant of defendant's motion obviates need for a trial, those motions are denied as moot.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (DE 46) is GRANTED, and plaintiff's motion for summary judgment (DE 58) is DENIED. Further, the parties' motions to exclude the testimony and opinions of certain experts (DE 50, 56) are DENIED as moot. The clerk is DIRECTED to close this case.

---

[7] Further, even assuming that the Harrington complaint arose out of defendant's error, the court is unable to read that document in such a way that it does not assert that defendant's error was at least "contributed to by" plaintiff, as would except coverage of costs or expenses under the indemnity provision.

SO ORDERED, this the 30th day of March, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge